No. 20-15662

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

AXON ENTERPRISE, INC.,

*Plaintiff-Appellant*,

v.

FEDERAL TRADE COMMISSION;
JOSEPH J. SIMONS, NOAH PHILLIPS, ROHIT CHOPRA, REBECCA SLAUGHTER, and
CHRISTINE WILSON, in their official capacities as Commissioners of the Federal Trade
Commission,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the
District of Arizona, No. 2:20-cv-00014-DWL

_____

**ANSWERING BRIEF FOR THE FEDERAL DEFENDANTS**

_____

JOSEPH H. HUNT
  *Assistant Attorney General*

MARK B. STERN
JOSHUA M. SALZMAN
DANIEL AGUILAR
AMANDA L. MUNDELL
*Attorneys, Appellate Staff*
*Civil Division, Room 7266*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530-0001*
*(202) 514-5432*

# TABLE OF CONTENTS

**Page(s)**

STATEMENT OF JURISDICTION .................................................................1

INTRODUCTION AND STATEMENT OF THE ISSUES ......................................1

PERTINENT STATUTES AND REGULATIONS ......................................................2

STATEMENT OF THE CASE ........................................................................2

    I.    Statutory And Regulatory Framework .........................................2

    II.    Prior Proceedings ...........................................................4

SUMMARY OF ARGUMENT ........................................................................9

STANDARD OF REVIEW.......................................................................... 10

ARGUMENT ......................................................................................... 10

    I.    The District Court Lacked Subject Matter Jurisdiction Because Axon's Claims Are Statutorily Channeled To The Courts Of Appeals ...................................................... 10

        A.    The FTC Act Provides A Comprehensive And Exclusive Review Scheme............................................... 11

        B.    Axon's Claims Are The Kind Congress Intended To Proceed Under The FTC Act................................... 18

            1.    Axon Can Receive Meaningful Judicial Review................. 19

            2.    Axon's Claims Are Not "Wholly Collateral" To The FTC Act's Review Provisions..................................... 27

            3.    The FTC Can Bring Its Expertise To Bear On Axon's Claims ....................................................... 28

II.     Axon Has Not Challenged Final Agency Action ..................................... 29

CONCLUSION ............................................................................................................ 35

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

## TABLE OF AUTHORITIES

**Cases:**                                                                                    **Page(s)**

*Arch Coal, Inc. v. Acosta,*
  888 F.3d 493 (D.C. Cir. 2018) ................................................................. 16, 34

*Association of Am. Med. Colleges v. United States,*
  217 F.3d 770 (9th Cir. 2000) ................................................................... 34

*Bank of Louisiana v. FDIC,*
  919 F.3d 916 (5th Cir. 2019) ............................................................ 17, 21, 27

*Bebo v. SEC,*
  799 F.3d 765 (7th Cir. 2015) ............................................................ 16, 21, 23

*Bennett v. SEC,*
  844 F.3d 174 (4th Cir. 2016) ...................................................... 16, 21, 27, 28

*Bennett v. Spear,*
  520 U.S. 154, 178 (1997) ......................................................................... 33

*Bolling v. Sharpe,*
  347 U.S. 497 (1954) ................................................................................ 18

*CSX Transp., Inc. v. Surface Transp. Bd.,*
  774 F.3d 25 (D.C. Cir. 2014) ................................................................... 34

*Dairymen, Inc. v. FTC,*
  684 F.2d 376 (6th Cir. 1982) ................................................................... 33

*Elgin v. Department of Treasury,*
  567 U.S. 1 (2012) ...................................... 7, 8, 9, 10, 11, 13, 14, 15, 19, 20, 23, 24, 28

*Elrod v. Burns,*
  427 U.S. 347 (1976) ................................................................................ 22

*Free Enterprise Fund v. Public Company Accounting Oversight Bd.,*
  561 U.S. 477 (2010) .......................................................................... 25, 26

*FTC v. Cement Inst.,*
  333 U.S. 683 (1948) ................................................................................. 2

*FTC v. Standard Oil Co.,*
    449 U.S. 232 (1980) .................................................................. 10, 24, 31, 32, 34

*General Atomics v. U.S. Nuclear Regulatory Comm'n,*
    75 F.3d 536 (9th Cir. 1996) ............................................................... 34

*Hill v. SEC,*
    825 F.3d 1236 (11th Cir. 2016) ...................................... 16, 20, 21, 26, 27, 29

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
    684 F.3d 1332 (D.C. Cir. 2012) ......................................................... 19

*Jarkesy v. SEC,*
    803 F.3d 8 (D.C. Cir. 2015) ........................................... 16, 21, 27, 28

*Kerr v. Jewell,*
    836 F.3d 1048 (9th Cir. 2016) ........................................... 6, 10, 15

*LabMD, Inc. v. FTC,*
    776 F.3d 1275 (11th Cir. 2015) .................................. 17, 20, 25, 33

*Lucia v. SEC,*
    138 S. Ct. 2044 (2018) ................................................................. 21

*McNary v. Haitian Refugee Center, Inc.,*
    498 U.S. 479 (1991) ................................................................ 21, 22Sh

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) .......................................................... 22

*PHH Corp. v. CFPB,*
    839 F.3d 1 (D.C. Cir. 2016) ........................................................... 21

*R.R. Donnelley & Sons Co. v. FTC,*
    931 F.2d 430 (7th Cir. 1991) .......................................................... 33

*Shell Gulf of Mexico Inc. v. Center for Biological Diversity, Inc.,*
    771 F.3d 632 (9th Cir. 2014) .......................................................... 30

*Sierra Club v. Trump,*
    929 F.3d 670 (9th Cir. 2019) .......................................................... 31

*Stillaguamish Tribe of Indians v. Washington*,
  913 F.3d 1116 (9th Cir. 2019) ...................................... 30

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ..................... 1, 7, 8, 9, 12, 13, 14, 15, 16, 17, 19, 20, 23, 24, 27

*Tilton v. SEC*,
  824 F.3d 276 (2d Cir. 2016) .............................. 16, 21, 29

*Ukiah Valley Med. Ctr. v. FTC*,
  911 F.2d 261 (9th Cir. 1990) ........................ 10, 31, 32, 33

*Veterans for Common Sense v. Shinseki*,
  678 F.3d 1013 (9th Cir. 2012) (en banc) .................... 21, 22

## Statutes:

5 U.S.C. § 557(b) ...................................................... 3

5 U.S.C. § 702 ....................................................... 30

5 U.S.C. § 704 ....................................................... 31

5 U.S.C. § 706 ....................................................... 31

15 U.S.C. § 45(a)(1) .................................................. 2

15 U.S.C. § 45(b) ............................................. 3, 11, 18

15 U.S.C. § 45(c) ......................................... 4, 11, 17, 19, 31

15 U.S.C. § 45(d) ................................................. 4, 12

15 U.S.C. § 45(g)(1) ................................................. 3

15 U.S.C. § 45(g)(2) ............................................. 11, 20

15 U.S.C. § 45(g)(3) ................................................. 4

15 U.S.C. § 45(g)(4) .......................................... 3, 12, 20

15 U.S.C. § 45(*l*) ................................................................................ 3

15 U.S.C. § 53(b) ................................................................................ 2

15 U.S.C. § 57b(a)(1) ........................................................................... 2

15 U.S.C. § 57b(a)(2) ........................................................................... 3

15 U.S.C. § 78d-1(a) ............................................................................ 15

15 U.S.C. § 78u(d)(1) ........................................................................... 15

15 U.S.C. § 78y ................................................................................... 16

15 U.S.C. § 78y(a)(1) ........................................................................... 15

15 U.S.C. § 78y(a)(3) ........................................................................... 15

15 U.S.C. § 78y(c)(2) ........................................................................... 15

15 U.S.C. § 78u-1 ................................................................................ 15

15 U.S.C. § 78u-2 ................................................................................ 15

15 U.S.C. § 78u-3 ................................................................................ 15

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 1331 ................................................................................. 1, 6, 30

28 U.S.C. § 2201 ................................................................................. 30

30 U.S.C. § 816(a)(1) ........................................................................... 12

30 U.S.C. § 816(c) ............................................................................... 12

30 U.S.C. § 818(a) ............................................................................... 12

30 U.S.C. § 820(j) ............................................................................... 12

**Regulations:**

16 C.F.R. § 3.41 ........................................................................... 3, 11

16 C.F.R. § 3.51 ............................................................................ 3

16 C.F.R. § 3.52 ........................................................................... 3, 11

16 C.F.R. § 3.53 ............................................................................ 3

16 C.F.R. § 3.54(a) ....................................................................... 3

16 C.F.R. § 3.54(b) ....................................................................... 3

16 C.F.R. § 3.55 ............................................................................ 4

16 C.F.R. §§ 3.21-3.22 .................................................................. 3

16 C.F.R. § 3.31 ............................................................................ 3

17 C.F.R. §§ 201.221-201.360 ..................................................... 15

17 C.F.R. § 201.410(a) ................................................................. 15

**Filings in Related Administrative Proceeding,** *In re Axon Enterprise, Inc.*:

Amended Answer and Defenses,
(FTC Mar. 2, 2020), https://go.usa.gov/xveZ8 ....................................... 5

Answer and Defenses,
(FTC Jan. 21, 2020), https://go.usa.gov/xveWJ ...................................... 5

Complaint,
(FTC Jan. 3, 2020), https://go.usa.gov/xvMWu...................................... 5

First Revised Scheduling Order,
(FTC Mar. 17, 2020), https://go.usa.gov/xveZd ..................................... 5

Second Order Regarding Scheduling,
(FTC Apr. 13, 2020), https://go.usa.gov/xveBe...................................... 5

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331. ER131, ¶ 16.  The district court dismissed the case for lack of subject matter jurisdiction, ER33, and entered judgment on April 8, 2020, ER4.  Plaintiff filed a notice of appeal on April 13, 2020.  ER1-2.  This Court has jurisdiction under 28 U.S.C. § 1291.

## INTRODUCTION AND STATEMENT OF THE ISSUES

The Federal Trade Commission Act provides that the Federal Trade Commission may conduct administrative enforcement proceedings.  If a proceeding culminates in an adverse final order, the respondent may seek direct review in the courts of appeals.  Plaintiff Axon Enterprise, Inc., is a respondent in an ongoing administrative proceeding before the Federal Trade Commission, to determine whether it has violated the antitrust laws.  It brought this action in district court seeking to enjoin the proceeding on various grounds.  The district court dismissed the suit, holding that the FTC scheme parallels the statutory scheme in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 216 (1994), under which all claims, including constitutional claims, must be presented to the agency subject to direct review in the court of appeals.  In light of that disposition, the district court was not required to consider whether suit under the Administrative Procedure Act would be precluded in any event because Axon does not challenge final agency action, a prerequisite to judicial review.

The issues presented on appeal are:

1. Whether Axon may circumvent the Federal Trade Commission's statutory review scheme by seeking to enjoin an administrative proceeding in district court.

2. Whether, in the alternative, dismissal would be required because Axon does not challenge final agency action and therefore cannot proceed under the Administrative Procedure Act.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations appear in the addendum to this brief.

## STATEMENT OF THE CASE

### I. STATUTORY AND REGULATORY FRAMEWORK

The Federal Trade Commission Act (FTC Act) forbids "[u]nfair methods of competition * * * and unfair or deceptive acts or practices" that affect commerce. 15 U.S.C. § 45(a)(1). To that end, the Federal Trade Commission (FTC) investigates and brings enforcement actions concerning possible unfair methods of competition, which include "those restraints of trade which also [are] outlawed by" the antitrust laws. *See FTC v. Cement Inst.*, 333 U.S. 683, 691-92 (1948). Congress has authorized the FTC to initiate enforcement by suing in district court when a party has committed "unfair or deceptive acts or practices" that violate an FTC rule, 15 U.S.C. § 57b(a)(1); by seeking a preliminary or permanent injunction in district court against a party whom the FTC "has reason to believe" is committing any violation, *id.* § 53(b); or by instituting an administrative proceeding within the FTC to determine whether a

2

respondent has committed a violation, *id.* § 45(b). If the administrative proceeding establishes that the respondent has committed a violation, then the FTC "shall issue" an order requiring the respondent "to cease and desist," *id.* § 45(b), which can later be enforced in federal court, *id.* § 45(*l*); *see also id.* § 57b(a)(2).

The initial stages of an administrative proceeding are typically assigned to an ALJ. The ALJ conducts prehearing proceedings—including holding conferences, receiving legal briefs and motions, and overseeing discovery, *see* 16 C.F.R. §§ 3.21-3.22, 3.31—and holds an evidentiary hearing, *id.* § 3.41. After the hearing, the ALJ issues an initial decision, *id.* § 3.51, which the respondent may appeal as of right to the FTC, *id.* § 3.52. Even if a respondent does not file an affirmative appeal, the FTC may still review the ALJ's initial decision *sua sponte.* *Id.* § 3.53.[1]

The FTC reviews an ALJ's initial decision de novo, 5 U.S.C. § 557(b); 16 C.F.R. § 3.54(a), and it may "adopt, modify, or set aside the findings, conclusions, and rule or order contained in the initial decision." 16 C.F.R. § 3.54(b). If the FTC issues a cease-and-desist order, that order generally becomes final sixty days after the respondent is served with the order. 15 U.S.C. § 45(g)(1). If, however, an order requires a respondent to divest itself of stock, other share capital, or assets, then it becomes final after all potential judicial review has been exhausted. *Id.* § 45(g)(4).

---

[1] If no notice of appeal is filed and the Commission does not review on its own initiative, the ALJ's decision becomes the decision of the Commission thirty days after the respondent is served with it. 16 C.F.R. § 3.51(a).

Similarly, if the FTC wishes to bring a district court action to collect a civil penalty based on an administrative cease-and-desist order, then the FTC must wait until the respondent has exhausted all judicial review. *Id.* § 45(g)(3).

If the FTC enters a cease-and-desist order, the respondent "may obtain a review of such order in the court of appeals" where the alleged violation took place, or where the respondent resides or carries on business. 15 U.S.C. § 45(c). Although the FTC generally has authority to reconsider its orders, 16 C.F.R. § 3.55, once the FTC files the record with the court of appeals, then "the jurisdiction of the court of appeals of the United States to affirm, enforce, modify, or set aside orders of the Commission shall be exclusive." 15 U.S.C. § 45(d).

## II.  PRIOR PROCEEDINGS

**A.**  Axon, formerly known as TASER International, Inc., manufactures "non-lethal policing equipment" including body-worn cameras and digital evidence management systems. ER6; ER125-26, ¶ 3. After Axon acquired one of its competitors (Vievu LLC) in 2018, the FTC began an investigation of Axon's acquisition. ER6; ER132-33, ¶¶ 22-25.

On January 3, 2020, Axon preemptively filed a lawsuit seeking to enjoin any administrative proceeding that the FTC might initiate. ER124, 151. Axon alleged that the "imminent administrative proceeding" would violate the Fifth Amendment's Due Process clause (ER149, ¶¶58-60), that the statutory restrictions on the removal of the FTC Commissioners and its ALJs were unconstitutional (ER150, ¶ 62), and that Axon

4

was entitled to a declaratory judgment that its acquisition of a competitor did not violate the antitrust laws (ER150-51, ¶¶ 64-69).

Later that same day, the FTC initiated an administrative proceeding against Axon, stating that it had reason to believe that Axon's acquisition of its competitor violated the FTC Act and the antitrust laws. ER7; Complaint, *In re Axon Enterprise, Inc.* (*In re Axon*) (FTC Jan. 3, 2020), https://go.usa.gov/xvMWu. In the administrative proceeding, Axon raised the same claims it raised in district court—that the complaint failed to allege a violation of the FTC Act or the antitrust laws, that the Commissioners' and ALJs' removal restrictions were unconstitutional, and that the administrative proceeding violated the Due Process clause of the Fifth Amendment. Answer and Defenses at 20-22, *In re Axon* (FTC Jan. 21, 2020), https://go.usa.gov/xveWJ (First, Thirteenth, Sixteenth, and Seventeenth affirmative defenses); Amended Answer and Defenses at 20-23, *In re Axon* (FTC Mar. 2, 2020), https://go.usa.gov/xveZ8 (First, Fourteenth, Fifteenth, Seventeenth, and Eighteenth affirmative defenses). The ALJ scheduled an evidentiary hearing to begin on June 23, 2020, which the FTC stayed for seventy-five days due to the public health emergency caused by the novel coronavirus. First Revised Scheduling Order at 5, *In re Axon* (FTC Mar. 17, 2020), https://go.usa.gov/xveZd; Second Order Regarding Scheduling, *In re Axon* (FTC Apr. 13, 2020), https://go.usa.gov/xveBe.

**B.** In the district court, Axon moved to preliminarily enjoin the administrative proceeding. Dkt. No. 15, *Axon Enterprise Inc. v. FTC*, No. 20-14 (D. Ariz. Jan. 6,

2020).  The FTC opposed, arguing that under the FTC Act only the court of appeals, and not the district court, has jurisdiction to review the FTC's administrative proceeding.  Dkt. No. 19, at 4-12, *Axon Enterprise Inc. v. FTC*, No. 20-14 (D. Ariz. Jan. 23, 2020).  The FTC additionally argued that Axon could not bring a district court action under the Administrative Procedure Act (APA) because the FTC had not yet taken any final agency action that could be the basis for judicial review.  *Id.* at 12-14.

The district court agreed with the FTC's first argument, declined to address the second argument, and dismissed Axon's complaint for lack of subject-matter jurisdiction.  The court first explained that district courts generally have jurisdiction over cases that raise federal questions, 28 U.S.C. § 1331, but that "grant of jurisdiction * * * is not absolute" and Congress may implicitly "preclude[] district court jurisdiction" by creating a statutory review scheme that bypasses the district courts and vests judicial review of agency action directly in the courts of appeals.  ER8 (quoting *Kerr v. Jewell*, 836 F.3d 1048, 1057 (9th Cir. 2016)).

The district court held that the text, structure, and purpose of the FTC Act "strongly supports a finding" that district courts lack jurisdiction over Axon's claims.  ER13-14.  The court explained that the FTC Act "sets out a detailed scheme for preventing the use of unfair methods of competition," with "enforcement provisions [that] create timelines and mechanisms for adjudicating alleged violations," and allocates "exclusive jurisdiction" to the courts of appeals to review the agency's orders.  ER14.  The court concluded that this "detailed structure" for administrative

adjudication and direct review in the court of appeals suggested that Congress did not intend for district court jurisdiction to challenge the underlying administrative proceedings. ER14 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)). In this regard, the court also noted that Congress had granted the FTC statutory authority to sue in district court in lieu of an administrative proceeding, but had provided regulated parties no similar authority. ER14-15. Likewise, the court concluded that the purpose of the FTC Act—to grant the FTC "broad enforcement powers" and to "bring[] order from chaos"—further demonstrated Congress's intent to preclude district court jurisdiction. ER15 (quotation marks omitted).[2]

The district court considered the three factors identified by the Supreme Court as relevant to whether a specific plaintiff's claims ought to be channeled to the court of appeals and not the district court. ER17 (citing *Elgin v. Department of Treasury*, 567 U.S. 1, 15-16 (2012)). The court held that each of these factors—(1) whether Axon's claims could receive meaningful judicial review under the FTC Act, (2) whether Axon's suit is "wholly collateral" to the FTC Act's review provisions, and (3) whether Axon's claims fall outside the FTC's expertise—further supported the conclusion that it lacked jurisdiction over Axon's claims. ER17-32.

---

[2] Examining the FTC Act's legislative history, the district court concluded that it "tend[ed] to support the inference that Congress sought to preclude district court jurisdiction," and it did not "appear Congress ever considered amending the FTC Act to route complaints through any process other than administrative proceedings." ER16-17.

First, the court explained that Axon can receive meaningful judicial review by presenting its claims in the administrative proceeding and, if aggrieved by a final agency decision, on judicial review in this Court. ER18. The court noted that the Supreme Court's decisions in *Thunder Basin* and *Elgin* make clear that "the eventual availability of review in federal appellate court—even if preceded by litigation before administrative bodies that refused to consider or develop the constitutional claims—is sufficient." ER18. Here, the court noted, Axon is already a respondent in an FTC administrative proceeding, where it "can raise (and has raised) all of its constitutional challenges * * * and may renew those challenges when seeking review by a federal appellate court." ER20.

Second, the court held that Axon's claims were not "wholly collateral" to the FTC Act's review provisions. ER26-30. The court explained that a claim is not "wholly collateral" if "a vehicle exists (or could exist) for the plaintiff [to] ultimately receive judicial review of its constitutional claim." ER27. Here, the court noted, Axon has raised its claims in the administrative proceeding and could continue to pursue them, if necessary, in the courts of appeals, and thus possessed a vehicle to press its claims. ER28. The court rejected Axon's assertion that its claims were "wholly collateral" because they were constitutional in nature, explaining that the Supreme Court had already rejected that argument. ER28 (citing *Elgin*, 567 U.S. at 15).

Third, the court concluded that the FTC could bring its expertise to bear on Axon's claims by addressing non-constitutional merits questions, which might "fully dispose of the case" and thus "avoid the need to reach [the] constitutional claims." ER30 (quoting *Elgin*, 567 U.S. at 23). Because Axon "maintains it has done nothing wrong," the court explained that the "FTC, in applying its own expertise, may agree" and might conclude that Axon has fully complied with the FTC Act and the antitrust laws. ER31. Such a result would eliminate the "need for a federal appellate court to reach Axon's constitutional claims," and further supported the conclusion that district courts lack jurisdiction over these kind of claims. ER31.

## SUMMARY OF ARGUMENT

**I.** Congress can direct litigants to proceed through a statutory scheme of administrative and judicial review in the court of appeals—thus depriving district courts of jurisdiction—when (1) Congress's intent to preclude district court jurisdiction is "fairly discernable in the statutory scheme," and (2) the plaintiff's claims are "of the type Congress intended to be reviewed within [the] statutory structure." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994).

Congress created the FTC Act's review scheme, which authorizes the FTC to initiate administrative enforcement proceedings and provides exclusive judicial review in the courts of appeals. The district court correctly explained that Axon's claims can and must be channeled through this statutory review scheme.

9

**II.** Even assuming that the comprehensive scheme established by Congress is not exclusive, dismissal would be appropriate because Axon does not challenge final agency action within the meaning of the APA. The FTC's initiation of an enforcement proceeding is not final agency action. *See FTC v. Standard Oil Co.*, 449 U.S. 232, 246 (1980); *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 266 (9th Cir. 1990).

## STANDARD OF REVIEW

Dismissal for lack of subject-matter jurisdiction is reviewed de novo. *Kerr v. Jewell*, 836 F.3d 1048, 1053 (9th Cir. 2016).

## ARGUMENT

## I. THE DISTRICT COURT LACKED SUBJECT MATTER JURISDICTION BECAUSE AXON'S CLAIMS ARE STATUTORILY CHANNELED TO THE COURT OF APPEALS

The FTC Act, like several other statutes, provides for administrative enforcement proceedings with direct review in the courts of appeals. The Supreme Court has made clear that the statutory review mechanism is often exclusive, unless there is reason to conclude that meaningful judicial review would not be available under the structure established by Congress.

In determining whether a direct review scheme implicitly precludes a party from asserting its defenses or other contentions in district court, a court first determines "whether it is 'fairly discernable' that Congress precluded district court jurisdiction" over the claims by examining the statute's "text, structure, and purpose." *Elgin v. Department of Treasury*, 567 U.S. 1, 10 (2012). If so, the court then determines

10

whether the plaintiff's claims are "the type that Congress intended to be reviewed within the [statutory] scheme." *Id.* at 15. A court's inquiry is guided by three factors: whether the plaintiff can receive meaningful judicial review through the statutory scheme; whether the plaintiff's claims are wholly collateral to the statutory review scheme; and whether the agency can bring its expertise to bear on plaintiff's claims. *Id.*

Because the FTC Act provides for exclusive review in the courts of appeals, and because Axon's claims are the type that Congress intended to be channeled through that scheme, the district court lacked jurisdiction over Axon's complaint.

### A. The FTC Act Provides A Comprehensive And Exclusive Review Scheme

**1.** The FTC Act sets out a comprehensive process for adjudicating claims at the agency level. The FTC initiates an administrative proceeding to determine whether a respondent has violated the FTC Act and the antitrust laws. 15 U.S.C. § 45(b). The respondent may present evidence and contest the allegations, both at a hearing before an ALJ and on appeal to the FTC. *Id.*; 16 C.F.R. §§ 3.41, 3.52. If the FTC concludes that the respondent has committed a violation and issues a cease-and-desist order, respondent may seek judicial review in the courts of appeals. 15 U.S.C. § 45(c). The court of appeals may issue a stay of the FTC's order pending judicial review, *id.* § 45(g)(2), and the FTC Act specifies that certain cease-and-desist orders will not take effect until after all judicial review in the courts of appeals and the

11

Supreme Court has been completed, *id.* § 45(g)(4). After the record is filed with the court of appeals, the court has "exclusive" jurisdiction "to affirm, enforce, modify, or set aside orders of the" FTC. *Id.* § 45(d).

The district court correctly held that it is fairly discernable from the text, structure, and purpose of this statutory scheme that it precludes district court jurisdiction. ER13-15. That conclusion is supported by numerous decisions by the Supreme Court and the courts of appeals, which hold that similar statutory schemes implicitly divest district courts of jurisdiction.

**2.** The Supreme Court explained in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994), that the Federal Mine Safety and Health Amendments Act of 1977 (Mine Act), implicitly precludes district court jurisdiction over claims that could be raised under the Mine Act's review scheme. If a mine operator allegedly violated the Mine Act, the Secretary of Labor could issue a citation, which the mine operator could challenge in an administrative proceeding. *Thunder Basin*, 510 U.S. at 207. The mine operator would receive a hearing before an ALJ, and could appeal any adverse ALJ decision to the Mine Safety and Health Review Commission. *Id.* at 207-08. The mine operator could further appeal any adverse Commission decision to the courts of appeals. *Id.* at 208. The court of appeals would have "exclusive jurisdiction" after the Commission filed the administrative record, and the court could issue a stay of any Commission decision. 30 U.S.C. § 816(a)(1), (c). While the Mine Act authorized the Secretary of Labor to sue in district court in certain cases, *id.* §§ 818(a), 820(j), "[m]ine

12

operators enjoy no corresponding right" to district court jurisdiction. *Thunder Basin*, 510 U.S. at 209.

In *Thunder Basin*, a mine operator had been warned by the Department of Labor that it was not in compliance with the Mine Act because it had failed to post information about miner representatives. 510 U.S. at 204. Rather than face a citation that it could challenge in administrative proceedings, the mine operator sued in district court, alleging that posting the information would cause it irreparable harm and that proceeding through the Mine Act's review scheme would violate the Fifth Amendment's Due Process clause. *Id.* at 205. The Supreme Court affirmed dismissal of the complaint, holding that the Mine Act's text, structure, and purpose "demonstrate[] that Congress intended to preclude challenges such as the present one." *Id.* at 208. The mine operator could not sue in district court, but must instead "complain to the Commission and then to the court of appeals." *Id.* at 209. The same conclusion applies here, where the FTC Act review scheme is in all material respects the same as the Mine Act.

The Supreme Court applied the same analysis in *Elgin*, holding that the Civil Service Reform Act (CSRA) provided an exclusive statutory review scheme that precluded district court jurisdiction. 567 U.S. at 10-13. The statute provided that federal agencies may take adverse employment actions against their employees (e.g., suspension or removal) after notice and an opportunity to respond before the agency. *Id.* at 5-6. An employee can appeal an adverse decision to the Merit Systems

13

Protection Board, and seek further judicial review of an adverse Board decision in the Federal Circuit, which has "exclusive jurisdiction." *Id.* at 6.

The plaintiffs in *Elgin* were fired from their federal employment because they allegedly failed to register for the draft. *Elgin*, 567 U.S. at 6-7. Instead of proceeding through the CSRA's review scheme, plaintiffs sued in district court, arguing that the draft unconstitutionally discriminates on the basis of sex by requiring only men to register. *Id.* at 7. As in *Thunder Basin*, the Supreme Court affirmed dismissal of the complaint for lack of jurisdiction. *Id.* at 8. "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Id.* at 11-12. Although the plaintiffs urged that the statutory review scheme should not preclude district court jurisdiction over constitutional claims, the Supreme Court rejected that argument, explaining that the "text and structure of the CSRA * * * provide no support for such an exception." *Id.* at 12; *see id.* at 15 (emphasizing that the statutory review scheme encompasses both facial and as-applied constitutional claims). Allowing district court jurisdiction would also undermine the statute's purpose by creating the "potential for inconsistent decisionmaking and duplicative judicial review" that the statutory scheme was designed to avoid. *Id.* at 14. Nothing in the statute supported the "odd notion that Congress intended to allow employees to pursue constitutional claims in district court at the cost of forgoing other, potentially meritorious claims" in the

14

administrative proceedings. *Id.* For the same reasons, the district court rightly held that the FTC Act's "detailed structure" and "painstaking detail concerning how to seek review" similarly preclude district court jurisdiction. ER14 (quotation marks omitted).

**3.** Applying *Thunder Basin* and *Elgin*, many courts of appeals, including this Court, have appropriately held that similar statutory review schemes preclude district court jurisdiction. *See Kerr v. Jewell*, 836 F.3d 1048, 1057-58 (9th Cir. 2016) (holding that retaliation claims under the Whistleblower Protection Act were appropriately channeled through the CSRA's review provisions).

Under the Securities Exchange Act of 1934, for example, the Securities and Exchange Commission (SEC) may institute an administrative proceeding against a respondent who is alleged to have violated the securities laws. 15 U.S.C. §§ 78u-1, 78u-2, 78u-3. Like the FTC's proceedings, the respondent is entitled to contest the allegations before an ALJ, *id.* § 78d-1(a); 17 C.F.R. §§ 201.221-201.360, may appeal any adverse decision to the SEC, 17 C.F.R. § 201.410(a), and may appeal any adverse SEC decision to the courts of appeals, 15 U.S.C. § 78y(a)(1). The court of appeals jurisdiction is "exclusive" after the agency files the record, and the court may stay the effect of any SEC order pending review. *Id.* § 78y(a)(3), (c)(2). Although the statute permits the SEC to also bring district court actions, *id.* § 78u(d)(1), there is no similar provision granting respondents a district court cause of action. As the district court

explained, the FTC Act is "nearly identical" to the SEC's statutory review scheme, "which itself resembles the review provisions" at issue in *Thunder Basin*. ER15 n.4.

When respondents in SEC administrative proceedings have sued in district court to enjoin those proceedings, the courts of appeals have repeatedly held that district courts lack jurisdiction over those claims. *Jarkesy v, SEC*, 803 F.3d 8, 12 (D.C. Cir. 2015); *Tilton v. SEC*, 824 F.3d 276, 278-79 (2d Cir. 2016); *Bennett v. SEC*, 844 F.3d 174, 188 (4th Cir. 2016); *Bebo v. SEC*, 799 F.3d 765, 766-67 (7th Cir. 2015); *Hill v. SEC*, 825 F.3d 1236, 1237-38 (11th Cir. 2016). Given the "painstaking detail" for administrative and judicial review laid out by these statutory provisions, "it is fairly discernable that Congress" did not intend to allow respondents to pursue parallel proceedings in district court to enjoin them. *Jarkesy*, 803 F.3d at 17 (quotation marks omitted); *see also Hill*, 825 F.3d at 1243 ("[R]espondents' constitutional challenges are essentially objections to forthcoming [SEC] orders; thus, they fall within the fairly discernable scope of § 78y's review procedures.").

The district court correctly recognized that the "persuasive" reasoning in these cases examining the SEC's scheme fits well with this case that concerns the substantively identical scheme created by the FTC Act. ER15 n.4. For similar reasons, the courts of appeals have held that other statutory review schemes that mirror the FTC Act implicitly divest district courts of jurisdiction. *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 499-500 (D.C. Cir. 2018) (Black Lung Benefits Review Act);

*Bank of Louisiana v. FDIC*, 919 F.3d 916, 923-24 (5th Cir. 2019) (Federal Deposit Insurance Act).

And the Eleventh Circuit has held that parties must raise "constitutional and ultra vires claims" concerning FTC administrative proceedings in those proceedings and on direct review under 15 U.S.C. § 45(c). *LabMD, Inc. v. FTC*, 776 F.3d 1275, 1279 (11th Cir. 2015). Applying *Thunder Basin*, the Eleventh Circuit explained that those kind of claims could "be meaningfully addressed in the Court of Appeals after final agency determination," and that "all constitutional claims must be funneled through the direct-appeal process after a final agency action if that is the scheme created by Congress." *Id.* (quotation marks omitted)

Accordingly, it is fairly discernable that Congress implicitly precluded district courts of jurisdiction over claims that can be channeled through the FTC Act.

**4.** Axon concedes that the FTC Act's channeling provision provides the exclusive means for review of at least some types of claims. *See* Br. 13 n.5 ("[T]he question is *not* whether the FTC Act creates an exclusive review scheme for *some* types of claims. It does."). At the same time, however, it seeks to cast doubt on the exclusive nature of the scheme. Axon mistakenly claims that the FTC Act does not preclude district court jurisdiction because it "[o]nly allows appeals from cease and desist orders" rather than all orders. Br. 27. Direct review schemes generally contemplate that the court will review final agency action, which, in the case of an FTC enforcement proceeding, takes the form of a cease and desist order. *See* 15

U.S.C. § 45(b) (If the FTC determines that the respondent has committed a violation, then "it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served on" respondent "an order requiring" the respondent "to cease and desist from using such method of competition or such act or practice.").

### B. Axon's Claims Are The Kind Congress Intended To Proceed Under The FTC Act

Axon's complaint presses three counts for relief. First, Axon claims that the FTC's administrative proceeding will "violate[] Axon's Due Process rights" by subjecting it to allegedly "unfair procedures before an administrative body," and thus deprive it of equal protection.[3] ER149, ¶¶ 58-60. Second, Axon claims that the statutory restrictions on the removal of FTC Commissioners and ALJs are "unconstitutional under Article II." ER150, ¶ 62. Third, although Axon is no longer pressing this contention, it asked the district court for a declaratory judgment that its acquisition of a competing business complied with the antitrust laws and is otherwise legal. ER150-51, ¶¶ 64-69. Based on these allegations, Axon asked the district court to "[e]njoin the FTC and its Commissioners from pursuing an administrative enforcement action against Axon." ER151.

---

[3] The Fourteenth Amendment's Equal Protection clause applies to the states, and not to the federal government. A plaintiff may, however, allege a discrimination claim that is cognizable as a violation of the Fifth Amendment's Due Process clause. *See Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954).

The district court correctly held that Axon's claims are the kind that must proceed through the exclusive review scheme established by the FTC Act, ER17-32, and that each of the three factors identified by the Supreme Court support this conclusion, *see Elgin*, 567 U.S. at 15-16; *Thunder Basin*, 510 U.S. at 212-13. Axon can receive meaningful judicial review of its claims under the FTC Act, its claims are not "wholly collateral" to the Act's review provisions, and the FTC can bring its expertise to bear on Axon's claims.

## 1. Axon Can Receive Meaningful Judicial Review

If Axon is ultimately aggrieved by the FTC's final order, it can seek review in this Court. 15 U.S.C. § 45(c). And if this Court were to agree with Axon on the merits, it could order whatever relief was warranted. *See, e.g., Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1340-42 (D.C. Cir. 2012) (severing removal restriction and remanding for further proceedings).

**a.** Axon urges that this relief is not meaningful because the FTC cannot grant relief on its constitutional claims. Br. 35-36. Even assuming that were true, the Supreme Court has explained that this would not alter the analysis. *Elgin* assumed that the agency could not declare a statute unconstitutional, but held that plaintiff's constitutional challenge could nevertheless receive meaningful judicial review under the statutory scheme. Because "the CSRA provides review in the Federal Circuit," the statutory scheme provided plaintiffs with access to "an Article III court fully competent to adjudicate" the constitutional claims. *Elgin*, 567 U.S. at 17. Likewise, in

19

*Thunder Basin*, the Supreme Court held that the statutory scheme provided meaningful judicial review because "petitioner's statutory and constitutional claims * * * can be meaningfully addressed in the Court of Appeals." 510 U.S. at 215. *See also LabMD*, 776 F.3d at 1279 (district court lacked jurisdiction over claim that FTC administrative proceedings had been instituted in retaliation for constitutionally protected speech).

The FTC Act provides for judicial review of Axon's claims in this Court if the FTC renders a final adverse decision. The statutory scheme provides that any adverse order will not take effect until Axon has had an opportunity to seek judicial review, and the Court may stay an adverse order if warranted. 15 U.S.C. § 45(g)(2). Furthermore, any order that Axon must divest itself of assets or shares will not take effect until Axon has exhausted judicial review. *Id.* § 45(g)(4). Given those safeguards, Axon cannot show that it will "suffer any serious deprivation that the court of appeals cannot remedy." *Hill*, 825 F.3d at 1247.

**b.** Axon's argument to the contrary rests largely on assertions that its claims are in some respect different from those the courts have uniformly held must be addressed in the exclusive scheme with direct review in the court of appeals.

Axon asserts that "structural[]" constitutional challenges are not subject to statutory review schemes. Br. 57. *Elgin* declined to carve out any exception for the general rule that statutory schemes can encompass all kinds of constitutional claims, even facial challenges to statutes. 567 U.S. at 15. And accordingly, the courts of appeals after *Elgin* have repeatedly held that due process and Article II claims (like

20

those Axon raises) must be raised under the applicable statutory review scheme. *See Jarkesy*, 803 F.3d at 14 (due process and equal protection claims); *Tilton*, 824 F.3d at 279-80 (Article II claims); *Bennett*, 844 F.3d at 177 (same); *Bank of Louisiana*, 919 F.3d at 921, 930 (due process, equal protection, and separation-of-powers claims); *Bebo*, 799 F.3d at 768 (same); *Hill*, 825 F.3d at 1239-40 (Article II, non-delegation, and Seventh Amendment claims). Indeed, parties who have followed these procedures and succeeded on the merits in court have been able to obtain meaningful relief. *See Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018) (granting relief on Article II claim presented on direct review of SEC proceeding); *PHH Corp. v. CFPB*, 839 F.3d 1, 12, 37-38 (D.C. Cir. 2016) (granting relief on Article II claim presented on direct review of CFPB proceeding), *rev'd en banc* 881 F.3d 75 (D.C. Cir. 2018).

Axon's reliance (Br. 20-24) on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991) and *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012) (en banc), underscores the errors of its analysis. *McNary* concerned a very different issue—whether the plaintiffs would be able to bring their challenges *at all* given a statute that barred all judicial review "of individual determinations [in particular immigration cases] except in deportation proceedings." 498 U.S. at 491. The Supreme Court held that the statutory bar did not apply to plaintiffs because they did "not seek review on the merits of a denial of a particular application." *Id.* at 494. The Court had no occasion to consider whether there was a statutory review scheme that

could channel plaintiffs' claims from agency proceedings to the courts of appeal. *See also* ER22-24 (district court explaining why *McNary* did not grant it jurisdiction).

Similarly, in *Veterans for Common Sense,* this Court considered whether the plaintiffs could raise their "challenge to delays in the administration of the [veterans'] benefits program" in district court, or whether plaintiffs must proceed through a statutory review scheme that "does not provide a mechanism by which the organizational plaintiffs here might challenge the absence of system-wide procedures." 678 F.3d at 1034-35. The Court explained that plaintiffs may proceed in district court "because [plaintiffs] cannot bring [their] suit in the Veterans Court" and so plaintiffs "would be unable to assert [their] claim in the" statutory review scheme. *Id.* at 1035. Here, by contrast, Axon has already raised all of its claims in the administrative proceeding, *see supra* p.5, and "can renew them, if necessary, when seeking review in an appellate court," ER25-26.

Similarly inapposite are those cases that state the general proposition that an alleged constitutional violation may support a preliminary injunction. Br. 35, 44-45. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Those cases do not concern district court jurisdiction where Congress has created an exclusive review scheme. Virtually "[e]very person hoping to enjoin an ongoing administrative proceeding could" argue that some aspect of the proceeding violates due process or equal protection, "yet courts consistently require plaintiffs to

use the administrative review schemes established by Congress." *Bebo*, 799 F.3d at 775.

Axon's attempt to recast its argument as a challenge to a pre-investigation decision does not far any better. Axon asserts that it is raising a challenge to the process by which the FTC and the Department of Justice conduct inter-agency consultation to enforce the antitrust laws, and that such a challenge cannot be channeled through the FTC Act's procedures. Br. 29-34. This argument has no apparent bearing on Axon's suit: Its complaint does not challenge the constitutionality of this pre-enforcement process, nor does it request any relief related to it. Instead, the complaint is focused on challenging the procedures the FTC will use in the administrative proceeding and requests that that proceeding be enjoined. ER149-151. Axon can and has raised those challenges in the FTC proceeding, *see supra* p.5, and can raise them on judicial review if necessary. And, in any event, such claims would no more fall outside the exclusive review scheme than its due process assertions.

Axon's attempt to characterize its arguments as "'pattern and practice' claims" is similarly wide of the mark. Br. 20-30. Nothing in *Thunder Basin* or *Elgin* suggests that a litigant can circumvent an exclusive review scheme by invoking this rubric. Indeed, *Elgin* expressly refused to create a categorical exception for facial constitutional challenges, explaining that these too can be channeled through a

statutory review scheme. 567 U.S. at 15 (rejecting petitioners' proposed exception as "hazy at best and incoherent at worst").

Axon's assortment of other contentions are similarly without merit. Supreme Court precedent precludes Axon's contention that the district court must have jurisdiction because Axon will otherwise "spend millions of non-recoupable dollars in an administrative forum" that it objects to. *Compare* Br. 35, *with FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980). *Standard Oil* squarely rejected the claim that a litigant can circumvent the FTC scheme based on assertions of litigation expense. Plaintiff in that suit filed a district court action to enjoin ongoing FTC proceedings, arguing that "it will be irreparably harmed unless" the FTC's proceeding "is judicially reviewed immediately" because "the expense and disruption of defending itself in protracted adjudicatory proceedings constitutes irreparable harm." *Standard Oil*, 449 U.S. at 244. The Supreme Court assumed that "the burden of defending this proceeding will be substantial," but explained that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Id.*; *see also id.* ("[T]he expense and annoyance of litigation is part of the social burden of living under government.") (quotation marks omitted). And *Thunder Basin* similarly rejected Axon's contention that it can proceed in district court on the ground that "adjudication of [its] claims through the statutory-review provisions will violate due process by depriving [it] of meaningful review." 510 U.S. at 214.

Axon also appears to claim that, because FTC proceedings against alleged violators often culminate in a finding of a violation, it is entitled to bring suit in district court rather than await potential review in the court of appeals. Br. 39-45. "But, high odds of a cease-and-desist order coming from the FTC" do not alter the contours of a court's jurisdiction. *LabMD*, 776 F.3d at 1278. Axon's "constitutional claims must be funneled through the direct-appeal process" and can be heard by this Court "after the agency action is complete." *Id.* at 1279.

**c.** Axon mistakenly relies on *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), to argue that it cannot receive meaningful judicial review of is removal challenges. Br. 50. Axon stands on entirely different footing compared to the *Free Enterprise* plaintiffs. In *Free Enterprise*, the plaintiffs raised a separation of powers challenge to the Public Company Accounting Oversight Board (a private regulatory body overseen by the SEC). 561 U.S. at 487. The Board had "beg[un] a formal investigation" into the plaintiffs' accounting practices, but the Board had not initiated any enforcement proceeding. *Id.* The plaintiffs sued in district court, arguing that the Board was unconstitutional because its members had not been properly appointed under the Appointments Clause and because the statutory restrictions on their removal violated the separation of powers. *Id.*

The Supreme Court held that plaintiffs could bring that action in district court because the SEC's statutory review scheme "provides only for judicial review of *Commission* action, and not every Board action is encapsulated in a final [SEC] order or

rule." *Free Enterprise*, 561 U.S. at 490. "In other words, although the text of [the statute] covered all final Commission orders, it did not cover all [Board] action" that the plaintiffs could seek to challenge. *Hill*, 825 F.3d at 1243. Thus, because the plaintiffs were not already in an administrative enforcement proceeding, they had no existing avenue to raise a separation-of-powers claim that could be heard through the statutory review scheme. The Supreme Court rejected suggestions that the plaintiffs ought to be forced to subject themselves to the statutory review scheme by "challeng[ing] a Board rule at random," or voluntarily choosing to "*incur* a sanction (such as a sizable fine) by ignoring Board requests for documents and testimony" that would trigger an enforcement proceeding. *Free Enterprise*, 561 U.S. at 490. The Court declined to require the plaintiffs to take "violative action" and potentially "bet the farm" in an administrative proceeding simply to create a vehicle that could proceed through the statutory review scheme. *Id.* at 490-91 (explaining that this is not "a 'meaningful' avenue of relief").

In contrast, Axon is already a respondent in an FTC proceeding, in which Axon has already challenged the FTC's action, and through which Axon can obtain de novo judicial review of its constitutional objections if the FTC issues an adverse order. Indeed, "Axon acknowledges that it 'could, in theory, raise its constitutional claims on appeal from an adverse [FTC] order.'" ER18. Unlike the *Free Enterprise* plaintiffs, Axon is "'already embroiled in an enforcement proceeding' and so 'need

not take *any* additional risks' to assert its constitutional claims." *Bank of Louisiana*, 919 F.3d at 927 (quoting *Bennett*, 844 F.3d at 186). At bottom, Axon's constitutional challenges are "essentially objections to forthcoming [FTC] orders" that fall "within the fairly discernible scope of" the statutory review procedures. *Hill*, 825 F.3d at 1243.

### 2. Axon's Claims Are Not "Wholly Collateral" To The FTC Act's Review Provisions

Axon's claims, far from being wholly collateral to the FTC Act's review provisions, are "inextricably intertwined with the conduct" of the pending enforcement proceeding. *Jarkesy*, 803 F.3d at 23. Axon's first claim—that the FTC administrative proceeding will deprive it of its Fifth Amendment Due Process rights—is the same claim that the plaintiff raised in *Thunder Basin* and that the Supreme Court held must be channeled through the statutory review scheme. *Thunder Basin*, 510 U.S. at 205 (plaintiff "alleged that requiring it to challenge the" agency's legal interpretation "through the statutory review-process would violate the Due Process Clause of the Fifth Amendment"). Axon raises various due process challenges to the procedures Congress created and the actions the FTC has taken in investigating and instituting a proceeding against Axon. ER136-39, ¶¶ 32-35. Those claims do not arise outside the FTC Act's review scheme—"they arise from actions the [FTC] took in the course of that scheme." *Jarkesy*, 803 F.3d at 23.

Axon's other claim—that the statutory removal restrictions for the FTC Commissioners and ALJ are unconstitutional—is likewise bound up with the ongoing proceeding, and like any other challenge to the propriety or fairness of the proceeding, it is to be asserted before the Commission with review in the court of appeals. This constitutional claim is "the vehicle by which [Axon] seek[s] to reverse" the agency's action of initiating the administrative proceeding and any adverse order. *Elgin*, 567 U.S. at 22. And, indeed, like its other claims, Axon has raised this claim as an affirmative defense in the administrative proceeding. *See supra* p.5.[4]

### 3. The FTC Can Bring Its Expertise To Bear On Axon's Claims

In *Elgin*, the Supreme Court explained that the third factor—whether the agency can bring its expertise to bear on a claim—is satisfied when the agency can address "threshold questions" that might "fully dispose of the case" in a plaintiff's favor. 567 U.S. at 22-23. In other words, if the administrative proceeding ends in plaintiff's favor or in a way that "alleviate[s] constitutional concerns," then there is "no reason to conclude that Congress intended to exempt such [constitutional] claims from" the statutory review scheme. *Id.* at 23; *see also Jarkesy*, 803 F.3d at 27 (the

---

[4] Although the FTC investigated Axon for 18 months, Axon did not sue until "hours before the FTC initiated an administrative proceeding against it." ER20. In similar circumstances, the Fourth Circuit held that a plaintiff's constitutional challenge was subject to the applicable statutory review scheme. *See Bennett*, 844 F.3d at 187 (claim not wholly collateral when plaintiff had been investigated by the SEC for three years, but lawsuit only filed after administrative proceeding began).

possibility that a plaintiff might prevail on other issues is "a *feature* of the administrative-exhaustion requirement, not a bug").  In other words, the possibility that Axon's constitutional challenges "may be mooted in adjudication warrants the requirement that [Axon] pursue adjudication, not shortcut it."  *Id.* (quotation marks omitted).

That requirement is clearly satisfied here—the FTC can clearly bring its substantive expertise to bear on Axon's claim that it has not violated the FTC Act or the antitrust laws.  *See* ER31 ("Axon maintains it has done nothing wrong.  The FTC, in applying its own expertise, may agree.").  If the FTC rules in Axon's favor on that claim, there is no need to consider any of the other claims Axon presses.  In that way, the FTC can bring its expertise to bear on Axon's claims.  *See Hill*, 825 F.3d at 1250 (concluding the same because "the Commission might decide that the SEC's substantive claims are meritless and thus would have no need to reach the constitutional claims"); *Tilton*, 824 F.3d at 290 ("[T]he Commission could rule that the appellants did not violate" the securities laws, "in which case the constitutional question would become moot.").[5]  The FTC's expertise with regard to the manner in

---

[5] Axon cursorily claims that "there are no threshold antitrust questions" on which the FTC could dispose of the case.  Br. 49.  It is not clear what Axon means.  If the FTC determines that Axon has not violated the antitrust laws and declines to issue any adverse order, that would be a threshold determination that would obviate the need to rule on any of Axon's constitutional claims.  And Axon, having prevailed on the merits, would have no need to seek judicial review.

which it conducts proceedings, and the safeguards afforded to respondents in those proceedings, also bears directly on Axon's due process claim.

## II.   AXON HAS NOT CHALLENGED FINAL AGENCY ACTION

Even assuming that Axon could properly seek review in district court under the APA rather than in a court of appeals as contemplated by the FTC Act, Axon's complaint would still be properly dismissed because it does not challenge final agency action. The district court, in light of its disposition, found it unnecessary to reach this issue, and this Court need not address the issue for the same reason. Were it to reach the issue, dismissal is necessary because Axon has not challenged final agency action, which is a prerequisite for its sole cause of action under the APA.

Axon's complaint alleges jurisdiction under 28 U.S.C. § 1331 (ER131, ¶ 16), but a plaintiff must have an independent cause of action to invoke the jurisdictional provisions of that statute. *Stillaguamish Tribe of Indians v. Washington*, 913 F.3d 1116, 1118 (9th Cir. 2019). Axon also invokes the Declaratory Judgment Act, 28 U.S.C. § 2201 (ER131, ¶ 17), which does not provide an independent cause of action, but rather allows a party to litigate an "underlying cause of action," such as an APA claim. *Shell Gulf of Mexico Inc. v. Center for Biological Diversity, Inc.*, 771 F.3d 632, 636 (9th Cir. 2014). Axon also invoked the Fifth Amendment's Due Process clause (ER131, ¶ 17), which is coextensive with its merits claims that the ongoing administrative proceeding violates due process (ER149, ¶¶ 58-60). Only the APA provides a private right of action. *See* 5 U.S.C. § 702 ("A person suffering legal

wrong because of agency action * * * is entitled to judicial review thereof.").[6]

Because plaintiffs' action arises solely under the APA, 5 U.S.C. § 704 expressly confines plaintiffs to challenging "final agency action," which they have not done. *See Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 263-64 (9th Cir. 1990) ("The district court correctly determined that the FTC's issuance of an administrative complaint did not constitute 'final agency action' and that judicial review was therefore premature."). Both the Supreme Court and this Court have held that the initiation of administrative enforcement proceedings is not final agency action that can be challenged in court.

In *FTC v. Standard Oil*, the FTC issued an administrative complaint against several oil companies. 449 U.S. at 234. One company sued in district court, arguing that the administrative proceedings were illegal because the FTC lacked a statutorily required "reason to believe" that the company had broken any laws. *Id.* at 235. The Supreme Court affirmed dismissal of the complaint because there had been no "final agency action" as required by the APA. *Id.* at 237-38 (citing 5 U.S.C. § 704).

The Court explained that the FTC's stated "reason to believe" that there had been illegal conduct was "not a definitive statement of position" and only represented

---

[6] In other circumstances, this Court has suggested that an equitable cause of action to enforce a constitutional guarantee may be available if no other cause of action would otherwise exist. *Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019). Here, however, both the FTC Act in 15 U.S.C. § 45(c), and the APA's provision for review of final agency actions, 5 U.S.C. § 704, provide for eventual review of Axon's claims, including its constitutional claims, *id.* § 706(2)(B). Axon will therefore have a cause of action if it is ultimately aggrieved by a final order of the FTC.

"a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings." *Standard Oil*, 449 U.S. at 241. The fact that there would be further proceedings and that the company "may challenge the complaint and its charges proves that the" FTC's statements in its complaint were not the agency's final determinations, but simply a "prerequisite" to those determinations. *Id.* The complaint's only effect was to "impose upon [the company] the burden of responding to the charges made against it." *Id.* at 242. That was "different in kind" from anything else that might be considered final agency action, *id.*, and the "expense and annoyance of litigation is 'part of the social burden of living under government,'" not an irreparable injury that warrants immediate judicial review, *id.* at 244.

This Court applied *Standard Oil* to similarly hold that the initiation of administrative proceedings is not final agency action. *Ukiah Valley Med. Ctr.*, 911 F.2d at 263-65. In that case, the plaintiffs challenged the FTC's jurisdiction to take enforcement action against them. The Plaintiffs asserted that the FTC's decision to initiate enforcement proceedings was the agency's final decision on whether it had jurisdiction to proceed, and claimed that this jurisdictional determination could be challenged as final agency action. This Court rejected that argument, explaining that the plaintiffs' jurisdictional challenge "is still pending" before the agency "and may be resolved" in their favor as part of the administrative proceedings. *Id.* at 264. If, "at the conclusion of the administrative proceedings," the agency were to "issue a final

order," then plaintiffs "can at that time obtain judicial review and challenge the issuance of the complaint as well as the agency's jurisdiction." *Id.* at 265.

Other courts of appeals have likewise rejected challenges to ongoing FTC proceedings because there has not yet been final agency action. Most recently, the Eleventh Circuit explained that there is no final agency action when the FTC initiates an administrative proceeding "because the agency proceeding is ongoing," so there have been no "direct and appreciable legal consequences," and "no rights or obligations have been determined." *LabMD*, 776 F.3d at 1278 (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). *See also R.R. Donnelley & Sons Co. v. FTC*, 931 F.2d 430, 431 (7th Cir. 1991) ("[Plaintiff] asks us to direct the FTC to end the case" but because "review is limited to the Commission's 'final' orders * * * we dismiss the petition"); *Dairymen, Inc. v. FTC*, 684 F.2d 376, 378 (6th Cir. 1982) (agreeing with the district court that judicial review "would no doubt be precluded by * * * the absence of a 'final agency action'").

Under the same analysis, there is no final agency action in Axon's administrative proceeding. The proceeding is ongoing and the FTC has not yet had a chance to consider Axon's constitutional challenges, or even determine whether Axon has committed any violations of the FTC Act or the antitrust laws. The matter may be resolved in Axon's favor, in which case there would be no agency action to challenge. Axon may seek review of any adverse decisions made during the enforcement proceedings after a final Commission order, but it "would wreak havoc

with the final order rule" to permit "a party to seek interlocutory review" of interim steps taken during enforcement proceedings. *Arch Coal*, 888 F.3d at 503 (no final agency action when agency had merely initiated enforcement proceedings); *see also CSX Transp., Inc. v. Surface Transp. Bd.*, 774 F.3d 25, 30 (D.C. Cir. 2014) ("It is firmly established that agency action is not final merely because it has the effect of requiring a party to participate in an agency proceeding."). As the Supreme Court recognized, "every respondent" in an FTC proceeding could similarly seek to challenge the initiation or manner of the FTC's proceedings, but that "should not be a means of turning" the FTC from a "prosecutor into [a] defendant before" the administrative "adjudication concludes." *Standard Oil*, 449 U.S. at 243.

And to the extent Axon is challenging the FTC's pre-enforcement investigation, that is even more clearly not final agency action. "An investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action." *Association of Am. Med. Colleges v. United States*, 217 F.3d 770, 781 (9th Cir. 2000). Thus, "[u]ntil the agency has issued a final order, the court will not entertain" plaintiffs' suit. *General Atomics v. U.S. Nuclear Regulatory Comm'n*, 75 F.3d 536, 540 (9th Cir. 1996).

34

**CONCLUSION**

The district court's judgment should be affirmed.

Respectfully submitted.

JOSEPH H. HUNT
  *Assistant Attorney General*

MARK B. STERN
JOSHUA M. SALZMAN
*/s/ Daniel Aguilar*
DANIEL AGUILAR
AMANDA L. MUNDELL
*Attorneys, Appellate Staff*
*Civil Division, Room 7266*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530-0001*
*(202) 514-5432*

## STATEMENT OF RELATED CASES

*Lucia v. SEC*, No. 19-56101 (9th Cir.).  In this appeal, plaintiff filed suit in district court to challenge an ongoing administrative proceeding before the Securities and Exchange Commission, and the district court dismissed for lack of jurisdiction. On appeal, the issues are whether plaintiffs' claims (concerning statutory removal restrictions and due process) are subject to channeling through the SEC's statutory review scheme, and whether plaintiffs have challenged final agency action.  The case is currently stayed while the Commissioners of the SEC consider whether to approve a settlement in principal of the administrative proceeding that has been reached between the SEC's division of enforcement and the plaintiffs.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font. I further certify that this brief complies with the type-volume limitation of Circuit Rule 32-1(a) because it contains 8,689 words, excluding the parts of the brief exempted under Rule 32(f), according to the count of Microsoft Word.

*/s/ Daniel Aguilar*
Daniel Aguilar

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

**Page**

5 U.S.C. § 702................................................................................Add. 1

5 U.S.C. § 704................................................................................Add. 1

5 U.S.C. § 706................................................................................Add. 1

15 U.S.C. § 45................................................................................Add. 2

15 U.S.C § 53................................................................................Add. 10

15 U.S.C. § 57b..............................................................................Add. 13

16 C.F.R. § 3.51.............................................................................Add. 15

16 C.F.R. § 3.52.............................................................................Add. 16

16 C.F.R. § 3.53.............................................................................Add. 20

16 C.F.R. § 3.54.............................................................................Add. 20

16 C.F.R. § 3.55.............................................................................Add. 20

## 5 U.S.C. § 702.  Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

## 5 U.S.C. § 704.  Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

## 5 U.S.C. § 706.  Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B) contrary to constitutional right, power, privilege, or immunity;

    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    (D) without observance of procedure required by law;

    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.


## 15 U.S.C. § 45.  Unfair methods of competition unlawful; prevention by Commission

(a) Declaration of unlawfulness; power to prohibit unfair practices; inapplicability to foreign trade

    (1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.

    (2) The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, except banks, savings and loan institutions described in section 57a(f)(3) of this title, Federal credit unions described in section 57a(f)(4) of this title, common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers subject to part A of subtitle VII of Title 49, and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act, 1921, as amended, except as provided in section 406(b) of said Act, from using unfair methods of

competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.

(3) This subsection shall not apply to unfair methods of competition involving commerce with foreign nations (other than import commerce) unless--

    (A) such methods of competition have a direct, substantial, and reasonably foreseeable effect--

        (i) on commerce which is not commerce with foreign nations, or on import commerce with foreign nations; or

        (ii) on export commerce with foreign nations, of a person engaged in such commerce in the United States; and

    (B) such effect gives rise to a claim under the provisions of this subsection, other than this paragraph.

If this subsection applies to such methods of competition only because of the operation of subparagraph (A)(ii), this subsection shall apply to such conduct only for injury to export business in the United States.

(4)    (A) For purposes of subsection (a), the term "unfair or deceptive acts or practices" includes such acts or practices involving foreign commerce that--

    (i) cause or are likely to cause reasonably foreseeable injury within the United States; or

    (ii) involve material conduct occurring within the United States.

(B) All remedies available to the Commission with respect to unfair and deceptive acts or practices shall be available for acts and practices described in this paragraph, including restitution to domestic or foreign victims.

(b) Proceeding by Commission; modifying and setting aside orders

Whenever the Commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce, and if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect and containing a notice of a hearing upon a day and at a place therein fixed at least thirty days after the service of said complaint.

The person, partnership, or corporation so complained of shall have the right to appear at the place and time so fixed and show cause why an order should not be entered by the Commission requiring such person, partnership, or corporation to cease and desist from the violation of the law so charged in said complaint. Any person, partnership, or corporation may make application, and upon good cause shown may be allowed by the Commission to intervene and appear in said proceeding by counsel or in person. The testimony in any such proceeding shall be reduced to writing and filed in the office of the Commission. If upon such hearing the Commission shall be of the opinion that the method of competition or the act or practice in question is prohibited by this subchapter, it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served on such person, partnership, or corporation an order requiring such person, partnership, or corporation to cease and desist from using such method of competition or such act or practice. Until the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, or, if a petition for review has been filed within such time then until the record in the proceeding has been filed in a court of appeals of the United States, as hereinafter provided, the Commission may at any time, upon such notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any report or any order made or issued by it under this section. After the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, the Commission may at any time, after notice and opportunity for hearing, reopen and alter, modify, or set aside, in whole or in part, any report or order made or issued by it under this section, whenever in the opinion of the Commission conditions of fact or of law have so changed as to require such action or if the public interest shall so require, except that (1) the said person, partnership, or corporation may, within sixty days after service upon him or it of said report or order entered after such a reopening, obtain a review thereof in the appropriate court of appeals of the United States, in the manner provided in subsection (c) of this section; and (2) in the case of an order, the Commission shall reopen any such order to consider whether such order (including any affirmative relief provision contained in such order) should be altered, modified, or set aside, in whole or in part, if the person, partnership, or corporation involved files a request with the Commission which makes a satisfactory showing that changed conditions of law or fact require such order to be altered, modified, or set aside, in whole or in part. The Commission shall determine whether to alter, modify, or set aside any order of the Commission in response to a request made by a person, partnership, or corporation under paragraph1 (2) not later than 120 days after the date of the filing of such request.

(c) Review of order; rehearing

Any person, partnership, or corporation required by an order of the Commission to cease and desist from using any method of competition or act or practice may obtain a review of such order in the court of appeals of the United States, within any circuit where the method of competition or the act or practice in question was used or where such person, partnership, or corporation resides or carries on business, by filing in the court, within sixty days from the date of the service of such order, a written petition praying that the order of the Commission be set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Commission, and thereupon the Commission shall file in the court the record in the proceeding, as provided in section 2112 of Title 28. Upon such filing of the petition the court shall have jurisdiction of the proceeding and of the question determined therein concurrently with the Commission until the filing of the record and shall have power to make and enter a decree affirming, modifying, or setting aside the order of the Commission, and enforcing the same to the extent that such order is affirmed and to issue such writs as are ancillary to its jurisdiction or are necessary in its judgement to prevent injury to the public or to competitors pendente lite. The findings of the Commission as to the facts, if supported by evidence, shall be conclusive. To the extent that the order of the Commission is affirmed, the court shall thereupon issue its own order commanding obedience to the terms of such order of the Commission. If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings as to the facts, or make new findings, by reason of the additional evidence so taken, and it shall file such modified or new findings, which, if supported by evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of its original order, with the return of such additional evidence. The judgment and decree of the court shall be final, except that the same shall be subject to review by the Supreme Court upon certiorari, as provided in section 1254 of Title 28.

(d) Jurisdiction of court

Upon the filing of the record with it the jurisdiction of the court of appeals of the United States to affirm, enforce, modify, or set aside orders of the Commission shall be exclusive.

(e) Exemption from liability

No order of the Commission or judgement of court to enforce the same shall in anywise relieve or absolve any person, partnership, or corporation from any liability under the Antitrust Acts.

(f) Service of complaints, orders and other processes; return

Complaints, orders, and other processes of the Commission under this section may be served by anyone duly authorized by the Commission, either (a) by delivering a copy thereof to the person to be served, or to a member of the partnership to be served, or the president, secretary, or other executive officer or a director of the corporation to be served; or (b) by leaving a copy thereof at the residence or the principal office or place of business of such person, partnership, or corporation; or (c) by mailing a copy thereof by registered mail or by certified mail addressed to such person, partnership, or corporation at his or its residence or principal office or place of business. The verified return by the person so serving said complaint, order, or other process setting forth the manner of said service shall be proof of the same, and the return post office receipt for said complaint, order, or other process mailed by registered mail or by certified mail as aforesaid shall be proof of the service of the same.

(g) Finality of order

An order of the Commission to cease and desist shall become final--

> (1) Upon the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time; but the Commission may thereafter modify or set aside its order to the extent provided in the last sentence of subsection (b).

> (2) Except as to any order provision subject to paragraph (4), upon the sixtieth day after such order is served, if a petition for review has been duly filed; except that any such order may be stayed, in whole or in part and subject to such conditions as may be appropriate, by--

>> (A) the Commission;

>> (B) an appropriate court of appeals of the United States, if (i) a petition for review of such order is pending in such court, and (ii) an application for such a stay was previously submitted to the Commission and the Commission, within the 30-day period beginning on the date the application was received by the Commission, either denied the application or did not grant or deny the application; or

>> (C) the Supreme Court, if an applicable petition for certiorari is pending.

Add. 6

(3) For purposes of subsection (m)(1)(B) and of section 57b(a)(2) of this title, if a petition for review of the order of the Commission has been filed--

> (A) upon the expiration of the time allowed for filing a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has been dismissed by the court of appeals and no petition for certiorari has been duly filed;

> (B) upon the denial of a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has been dismissed by the court of appeals; or

> (C) upon the expiration of 30 days from the date of issuance of a mandate of the Supreme Court directing that the order of the Commission be affirmed or the petition for review be dismissed.

(4) In the case of an order provision requiring a person, partnership, or corporation to divest itself of stock, other share capital, or assets, if a petition for review of such order of the Commission has been filed--

> (A) upon the expiration of the time allowed for filing a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has been dismissed by the court of appeals and no petition for certiorari has been duly filed;

> (B) upon the denial of a petition for certiorari, if the order of the Commission has been affirmed or the petition for review has been dismissed by the court of appeals; or

> (C) upon the expiration of 30 days from the date of issuance of a mandate of the Supreme Court directing that the order of the Commission be affirmed or the petition for review be dismissed.

(h) Modification or setting aside of order by Supreme Court

If the Supreme Court directs that the order of the Commission be modified or set aside, the order of the Commission rendered in accordance with the mandate of the Supreme Court shall become final upon the expiration of thirty days from the time it was rendered, unless within such thirty days either party has instituted proceedings to have such order corrected to accord with the mandate, in which event the order of the Commission shall become final when so corrected.

(i) Modification or setting aside of order by Court of Appeals

If the order of the Commission is modified or set aside by the court of appeals, and if (1) the time allowed for filing a petition for certiorari has expired and no such petition has been duly filed, or (2) the petition for certiorari has been denied, or (3) the decision of the court has been affirmed by the Supreme Court, then the order of the Commission rendered in accordance with the mandate of the court of appeals shall become final on the expiration of thirty days from the time such order of the Commission was rendered, unless within such thirty days either party has instituted proceedings to have such order corrected so that it will accord with the mandate, in which event the order of the Commission shall become final when so corrected.

(j) Rehearing upon order or remand

If the Supreme Court orders a rehearing; or if the case is remanded by the court of appeals to the Commission for a rehearing, and if (1) the time allowed for filing a petition for certiorari has expired, and no such petition has been duly filed, or (2) the petition for certiorari has been denied, or (3) the decision of the court has been affirmed by the Supreme Court, then the order of the Commission rendered upon such rehearing shall become final in the same manner as though no prior order of the Commission had been rendered.

(k) "Mandate" defined

As used in this section the term "mandate", in case a mandate has been recalled prior to the expiration of thirty days from the date of issuance thereof, means the final mandate.

(l) Penalty for violation of order; injunctions and other appropriate equitable relief

Any person, partnership, or corporation who violates an order of the Commission after it has become final, and while such order is in effect, shall forfeit and pay to the United States a civil penalty of not more than $10,000 for each violation, which shall accrue to the United States and may be recovered in a civil action brought by the Attorney General of the United States. Each separate violation of such an order shall be a separate offense, except that in a case of a violation through continuing failure to obey or neglect to obey a final order of the Commission, each day of continuance of such failure or neglect shall be deemed a separate offense. In such actions, the United States district courts are empowered to grant mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of such final orders of the Commission.

(m) Civil actions for recovery of penalties for knowing violations of rules and cease and desist orders respecting unfair or deceptive acts or practices; jurisdiction;

maximum amount of penalties; continuing violations; de novo determinations; compromise or settlement procedure

(1)     (A) The Commission may commence a civil action to recover a civil penalty in a district court of the United States against any person, partnership, or corporation which violates any rule under this subchapter respecting unfair or deceptive acts or practices (other than an interpretive rule or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of subsection (a)(1)) with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule. In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation.

(B) If the Commission determines in a proceeding under subsection (b) that any act or practice is unfair or deceptive, and issues a final cease and desist order, other than a consent order, with respect to such act or practice, then the Commission may commence a civil action to obtain a civil penalty in a district court of the United States against any person, partnership, or corporation which engages in such act or practice--

    (1) after such cease and desist order becomes final (whether or not such person, partnership, or corporation was subject to such cease and desist order), and

    (2) with actual knowledge that such act or practice is unfair or deceptive and is unlawful under subsection (a)(1) of this section.

In such action, such person, partnership, or corporation shall be liable for a civil penalty of not more than $10,000 for each violation.

(C) In the case of a violation through continuing failure to comply with a rule or with subsection (a)(1), each day of continuance of such failure shall be treated as a separate violation, for purposes of subparagraphs (A) and (B). In determining the amount of such a civil penalty, the court shall take into account the degree of culpability, any history of prior such conduct, ability to pay, effect on ability to continue to do business, and such other matters as justice may require.

(2) If the cease and desist order establishing that the act or practice is unfair or deceptive was not issued against the defendant in a civil penalty action under

paragraph (1)(B) the issues of fact in such action against such defendant shall be tried de novo. Upon request of any party to such an action against such defendant, the court shall also review the determination of law made by the Commission in the proceeding under subsection (b) that the act or practice which was the subject of such proceeding constituted an unfair or deceptive act or practice in violation of subsection (a).

(3) The Commission may compromise or settle any action for a civil penalty if such compromise or settlement is accompanied by a public statement of its reasons and is approved by the court.

(n) Standard of proof; public policy considerations

The Commission shall have no authority under this section or section 57a of this title to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition. In determining whether an act or practice is unfair, the Commission may consider established public policies as evidence to be considered with all other evidence. Such public policy considerations may not serve as a primary basis for such determination.


## 15 U.S.C. § 53.  False advertisements; injunctions and restraining orders

(a) Power of Commission; jurisdiction of courts

Whenever the Commission has reason to believe--

(1) that any person, partnership, or corporation is engaged in, or is about to engage in, the dissemination or the causing of the dissemination of any advertisement in violation of section 52 of this title, and

(2) that the enjoining thereof pending the issuance of a complaint by the Commission under section 45 of this title, and until such complaint is dismissed by the Commission or set aside by the court on review, or the order of the Commission to cease and desist made thereon has become final within the meaning of section 45 of this title, would be to the interest of the public,

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States or in the United States court of any Territory, to enjoin the dissemination or the causing of the dissemination of such

advertisement. Upon proper showing a temporary injunction or restraining order shall be granted without bond. Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28. In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought. In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.

(b) Temporary restraining orders; preliminary injunctions

Whenever the Commission has reason to believe--

> (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

> (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public--

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: Provided, however, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: Provided further, That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any suit may be brought where such person, partnership, or corporation resides or transacts business, or wherever venue is proper under section 1391 of Title 28. In addition, the court may, if the court determines that the interests of justice require that any other person, partnership, or corporation should be a party in such suit, cause such other person, partnership, or corporation to be added as a party without regard to whether venue is otherwise proper in the district in which the suit is brought. In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found.

(c) Service of process; proof of service

Any process of the Commission under this section may be served by any person duly authorized by the Commission--

> (1) by delivering a copy of such process to the person to be served, to a member of the partnership to be served, or to the president, secretary, or other executive officer or a director of the corporation to be served;

> (2) by leaving a copy of such process at the residence or the principal office or place of business of such person, partnership, or corporation; or

> (3) by mailing a copy of such process by registered mail or certified mail addressed to such person, partnership, or corporation at his, or her, or its residence, principal office, or principal place or business.

The verified return by the person serving such process setting forth the manner of such service shall be proof of the same.

(d) Exception of periodical publications

Whenever it appears to the satisfaction of the court in the case of a newspaper, magazine, periodical, or other publication, published at regular intervals--

> (1) that restraining the dissemination of a false advertisement in any particular issue of such publication would delay the delivery of such issue after the regular time therefor, and

> (2) that such delay would be due to the method by which the manufacture and distribution of such publication is customarily conducted by the publisher in accordance with sound business practice, and not to any method or device adopted for the evasion of this section or to prevent or delay the issuance of an injunction or restraining order with respect to such false advertisement or any other advertisement,

the court shall exclude such issue from the operation of the restraining order or injunction.


## 15 U.S.C. § 57b. Civil actions for violations of rules and cease and desist orders respective unfair or deceptive acts or practices

(a) Suits by Commission against persons, partnerships, or corporations; jurisdiction; relief for dishonest or fraudulent acts

(1) If any person, partnership, or corporation violates any rule under this subchapter respecting unfair or deceptive acts or practices (other than an interpretive rule, or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of section 45(a) of this title), then the Commission may commence a civil action against such person, partnership, or corporation for relief under subsection (b) in a United States district court or in any court of competent jurisdiction of a State.

(2) If any person, partnership, or corporation engages in any unfair or deceptive act or practice (within the meaning of section 45(a)(1) of this title) with respect to which the Commission has issued a final cease and desist order which is applicable to such person, partnership, or corporation, then the Commission may commence a civil action against such person, partnership, or corporation in a United States district court or in any court of competent jurisdiction of a State. If the Commission satisfies the court that the act or practice to which the cease and desist order relates is one which a reasonable man would have known under the circumstances was dishonest or fraudulent, the court may grant relief under subsection (b).

(b) Nature of relief available

The court in an action under subsection (a) shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice, as the case may be. Such relief may include, but shall not be limited to, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation or the unfair or deceptive act or practice, as the case may be; except that nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages.

(c) Conclusiveness of findings of Commission in cease and desist proceedings; notice of judicial proceedings to injured persons, etc.

(1) If (A) a cease and desist order issued under section 45(b) of this title has become final under section 45(g) of this title with respect to any person's, partnership's, or corporation's rule violation or unfair or deceptive act or practice, and (B) an action under this section is brought with respect to such person's, partnership's, or corporation's rule violation or act or practice, then the findings of the Commission as to the material facts in the proceeding under section 45(b) of this title with respect to such person's, partnership's, or corporation's rule violation or act or practice, shall be conclusive unless (i) the

terms of such cease and desist order expressly provide that the Commission's findings shall not be conclusive, or (ii) the order became final by reason of section 45(g)(1) of this title, in which case such finding shall be conclusive if supported by evidence.

(2) The court shall cause notice of an action under this section to be given in a manner which is reasonably calculated, under all of the circumstances, to apprise the persons, partnerships, and corporations allegedly injured by the defendant's rule violation or act or practice of the pendency of such action. Such notice may, in the discretion of the court, be given by publication.

(d) Time for bringing of actions

No action may be brought by the Commission under this section more than 3 years after the rule violation to which an action under subsection (a)(1) relates, or the unfair or deceptive act or practice to which an action under subsection (a)(2) relates; except that if a cease and desist order with respect to any person's, partnership's, or corporation's rule violation or unfair or deceptive act or practice has become final and such order was issued in a proceeding under section 45(b) of this title which was commenced not later than 3 years after the rule violation or act or practice occurred, a civil action may be commenced under this section against such person, partnership, or corporation at any time before the expiration of one year after such order becomes final.

(e) Availability of additional Federal or State remedies; other authority of Commission unaffected

Remedies provided in this section are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law. Nothing in this section shall be construed to affect any authority of the Commission under any other provision of law.


## 16 C.F.R. § 3.51.  Initial decision

(a) When filed and when effective. The Administrative Law Judge shall file an initial decision within 70 days after the filing of the last filed initial or reply proposed findings of fact, conclusions of law and order pursuant to § 3.46, within 85 days of the closing the hearing record pursuant to § 3.44(c) where the parties have waived the filing of proposed findings, or within 14 days after the granting of a motion for summary decision following a referral of such motion from the Commission. The Administrative Law Judge may extend any of these time periods by up to 30 days for

good cause. The Commission may further extend any of these time periods for good cause. Except in cases subject to § 3.52(a), once issued, the initial decision shall become the decision of the Commission 30 days after service thereof upon the parties or 30 days after the filing of a timely notice of appeal, whichever shall be later, unless a party filing such a notice shall have perfected an appeal by the timely filing of an appeal brief or the Commission shall have issued an order placing the case on its own docket for review or staying the effective date of the decision.

(b) Exhaustion of administrative remedies. An initial decision shall not be considered final agency action subject to judicial review under 5 U.S.C. 704. Any objection to a ruling by the Administrative Law Judge, or to a finding, conclusion or a provision of the order in the initial decision, which is not made a part of an appeal to the Commission shall be deemed to have been waived.

(c) Content, format for filing.

(1) An initial decision shall be based on a consideration of the whole record relevant to the issues decided, and shall be supported by reliable and probative evidence. The initial decision shall include a statement of findings of fact (with specific page references to principal supporting items of evidence in the record) and conclusions of law, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record (or those designated under paragraph (c)(2) of this section) and an appropriate rule or order. Rulings containing information granted in camera status pursuant to § 3.45 shall be filed in accordance with § 3.45(f).

(2) The initial decision shall be prepared in a common word processing format, such as WordPerfect or Microsoft Word, and shall be filed by the Administrative Law Judge with the Office of the Secretary in both electronic and paper versions.

(3) When more than one claim for relief is presented in an action, or when multiple parties are involved, the Administrative Law Judge may direct the entry of an initial decision as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of initial decision.

(d) By whom made. The initial decision shall be made and filed by the Administrative Law Judge who presided over the hearings, except when he or she shall have become unavailable to the Commission.

(e) Reopening of proceeding by Administrative Law Judge; termination of jurisdiction.

(1) At any time from the close of the hearing record pursuant to § 3.44(c) until the filing of his or her initial decision, an Administrative Law Judge may reopen the proceeding for the reception of further evidence for good cause shown.

(2) Except for the correction of clerical errors or pursuant to an order of remand from the Commission, the jurisdiction of the Administrative Law Judge is terminated upon the filing of his or her initial decision with respect to those issues decided pursuant to paragraph (c)(1) of this section.

## 16 C.F.R. § 3.52.  Appeal from initial decision.

(a) Automatic review of cases in which the Commission sought preliminary relief in federal court; timing. For proceedings with respect to which the Commission has sought preliminary relief in federal court under 15 U.S.C. 53(b), the Commission will review the initial decision without the filing of a notice of appeal.

(1) In such cases, any party may file objections to the initial decision or order of the Administrative Law Judge by filing its opening appeal brief, subject to the requirements in paragraph (c), within 20 days of the issuance of the initial decision. Any party may respond to any objections filed by another party by filing an answering brief, subject to the requirements of paragraph (d), within 20 days of service of the opening brief. Any party may file a reply to an answering brief, subject to the requirements of paragraph (e), within 5 days of service of the answering brief. Unless the Commission orders that there shall be no oral argument, it will hold oral argument within 10 days after the deadline for the filing of any reply briefs. The Commission will issue its final decision pursuant to § 3.54 within 45 days after oral argument. If no oral argument is scheduled, the Commission will issue its final decision pursuant to § 3.54 within 45 days after the deadline for the filing of any reply briefs.

(2) If no objections to the initial decision are filed, the Commission may in its discretion hold oral argument within 10 days after the deadline for the filing of objection, and will issue its final decision pursuant to § 3.54 within 45 days after oral argument. If no oral argument is scheduled, the Commission will issue its final decision pursuant to § 3.54 within 45 days after the deadline for the filing of objections.

(b) Review in all other cases; timing.

(1) In all cases other than those subject to paragraph (a), any party may file objections to the initial decision or order of the Administrative Law Judge by

filing a notice of appeal with the Secretary within 10 days after service of the initial decision. The notice shall specify the party or parties against whom the appeal is taken and shall designate the initial decision and order or part thereof appealed from. If a timely notice of appeal is filed by a party, any other party may thereafter file a notice of appeal within 5 days after service of the first notice, or within 10 days after service of the initial decision, whichever period expires last.

(2) In such cases, any party filing a notice of appeal must perfect its appeal by filing its opening appeal brief, subject to the requirements in paragraph (c), within 30 days of the issuance of the initial decision. Any party may respond to the opening appeal brief by filing an answering brief, subject to the requirements of paragraph (d), within 30 days of service of the opening brief. Any party may file a reply to an answering brief, subject to the requirements of paragraph (e), within 7 days of service of the answering brief. Unless the Commission orders that there shall be no oral argument, it will hold oral argument within 15 days after the deadline for the filing of any reply briefs. The Commission will issue its final decision pursuant to § 3.54 within 100 days after oral argument. If no oral argument is scheduled, the Commission will issue its final decision pursuant to § 3.54 within 100 days after the deadline for the filing of any reply briefs.

(c) Appeal brief.

(1) The opening appeal brief shall contain, in the order indicated, the following:

(i) A subject index of the matter in the brief, with page references, and a table of cases (alphabetically arranged), textbooks, statutes, and other material cited, with page references thereto;

(ii) A concise statement of the case, which includes a statement of facts relevant to the issues submitted for review, and a summary of the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief, and which must not merely repeat the argument headings;

(iii) A specification of the questions intended to be urged;

(iv) The argument presenting clearly the points of fact and law relied upon in support of the position taken on each question, with specific page references to the record and the legal or other material relied upon; and

      (v) A proposed form of order for the Commission's consideration instead of the order contained in the initial decision.

      (2) The brief shall not, without leave of the Commission, exceed 14,000 words.

(d) Answering brief. The answering brief shall contain a subject index, with page references, and a table of cases (alphabetically arranged), textbooks, statutes, and other material cited, with page references thereto, as well as arguments in response to the appellant's appeal brief. The answering brief shall not, without leave of the Commission, exceed 14,000 words.

(e) Reply brief. The reply brief shall be limited to rebuttal of matters in the answering brief and shall not, without leave of the Commission, exceed 7,000 words. The Commission will not consider new arguments or matters raised in reply briefs that could have been raised earlier in the principal briefs. No further briefs may be filed except by leave of the Commission.

(f) In camera information. If a party includes in any brief to be filed under this section information that has been granted in camera status pursuant to § 3.45(b) or is subject to confidentiality provisions pursuant to a protective order, the party shall file 2 versions of the brief in accordance with the procedures set forth in § 3.45(e). The time period specified by this section within which a party may file an answering or reply brief will begin to run upon service on the party of the in camera or confidential version of a brief.

(g) Signature.

      (1) The original of each brief filed shall have a hand-signed signature by an attorney of record for the party, or in the case of parties not represented by counsel, by the party itself, or by a partner if a partnership, or by an officer of the party if it is a corporation or an unincorporated association.

      (2) Signing a brief constitutes a representation by the signer that he or she has read it; that to the best of his or her knowledge, information, and belief, the statements made in it are true; that it is not interposed for delay; that it complies with the applicable word count limitation; and that to the best of his or her knowledge, information, and belief, it complies with all the other rules in this part. If a brief is not signed or is signed with intent to defeat the purpose of this section, it may be stricken as sham and false and the proceeding may go forward as though the brief has not been filed.

(h) Oral argument. All oral arguments shall be public unless otherwise ordered by the Commission. Oral arguments will be held in all cases on appeal or review to the

Commission, unless the Commission otherwise orders upon its own initiative or upon request of any party made at the time of filing his or her brief. Oral arguments before the Commission shall be reported stenographically, unless otherwise ordered, and a member of the Commission absent from an oral argument may participate in the consideration and decision of the appeal in any case in which the oral argument is stenographically reported.

(i) Corrections in transcript of oral argument. The Commission will entertain only joint motions of the parties requesting corrections in the transcript of oral argument, except that the Commission will receive a unilateral motion which recites that the parties have made a good faith effort to stipulate to the desired corrections but have been unable to do so. If the parties agree in part and disagree in part, they should file a joint motion incorporating the extent of their agreement, and, if desired, separate motions requesting those corrections to which they have been unable to agree. The Secretary, pursuant to delegation of authority by the Commission, is authorized to prepare and issue in the name of the Commission a brief "Order Correcting Transcript" whenever a joint motion to correct transcript is received.

(j) Briefs of amicus curiae. A brief of an amicus curiae may be filed by leave of the Commission granted on motion with notice to the parties or at the request of the Commission, except that such leave shall not be required when the brief is presented by an agency or officer of the United States; or by a State, territory, commonwealth, or the District of Columbia, or by an agency or officer of any of them. The brief may be conditionally filed with the motion for leave. A motion for leave shall identify the interest of the applicant and state how a Commission decision in the matter would affect the applicant or persons it represents. The motion shall also state the reasons why a brief of an amicus curiae is desirable. Except as otherwise permitted by the Commission, an amicus curiae shall file its brief within the time allowed the parties whose position as to affirmance or reversal the amicus brief will support. The Commission shall grant leave for a later filing only for cause shown, in which event it shall specify within what period such brief must be filed. A motion for an amicus curiae to participate in oral argument will be granted only for extraordinary reasons. An amicus brief may be no more than one-half the maximum length authorized by these rules for a party's principal brief.

(k) Word count limitation. The word count limitations in this section include headings, footnotes and quotations, but do not include the cover, table of contents, table of citations or authorities, glossaries, statements with respect to oral argument, any addendums containing statutes, rules or regulations, any certificates of counsel, proposed form of order, and any attachment required by § 3.45(e). Extensions of word count limitations are disfavored, and will only be granted where a party can

make a strong showing that undue prejudice would result from complying with the existing limit.

## 16 C.F.R. § 3.53. Review of initial decision in absence of appeal.

An order by the Commission placing a case on its own docket for review will set forth the scope of such review and the issues which will be considered and will make provision for the filing of briefs if deemed appropriate by the Commission.

## 16 C.F.R. § 3.54. Decision on appeal or review

(a) Upon appeal from or review of an initial decision, the Commission will consider such parts of the record as are cited or as may be necessary to resolve the issues presented and, in addition, will, to the extent necessary or desirable, exercise all the powers which it could have exercised if it had made the initial decision.

(b) In rendering its decision, the Commission will adopt, modify, or set aside the findings, conclusions, and rule or order contained in the initial decision, and will include in the decision a statement of the reasons or basis for its action and any concurring and dissenting opinions.

(c) In those cases where the Commission believes that it should have further information or additional views of the parties as to the form and content of the rule or order to be issued, the Commission, in its discretion, may withhold final action pending the receipt of such additional information or views.

(d) The order of the Commission disposing of adjudicative hearings under the Fair Packaging and Labeling Act will be published in the Federal Register and, if it contains a rule or regulation, will specify the effective date thereof, which will not be prior to the ninetieth (90th) day after its publication unless the Commission finds that emergency conditions exist necessitating an earlier effective date, in which event the Commission will specify in the order its findings as to such conditions.

## 16 C.F.R. § 3.55. Reconsideration

Within fourteen (14) days after completion of service of a Commission decision, any party may file with the Commission a petition for reconsideration of such decision, setting forth the relief desired and the grounds in support thereof. Any petition filed under this subsection must be confined to new questions raised by the decision or

final order and upon which the petitioner had no opportunity to argue before the Commission. Any party desiring to oppose such a petition shall file an answer thereto within ten (10) days after service upon him of the petition. The filing of a petition for reconsideration shall not operate to stay the effective date of the decision or order or to toll the running of any statutory time period affecting such decision or order unless specifically so ordered by the Commission.